**GLASSMAN, et al v. RONEY.**

Circuit Court, Dade County.

July 25, 1957.

Williams, Salomon & Katz, Miami, for plaintiffs.

Ward & Ward, Miami, for defendants.

ROBERT H. ANDERSON, Circuit Judge.

The plaintiffs, Herbert, Bernard and Stanley Glassman, co-partners trading as G & O Properties, brought a suit against Gertrude C. Roney for a declaratory decree. Their bill alleges that the defendant, joined by her now deceased husband, on March 13, 1946 entered into a 99-year lease with the Lincoln Corporation, which, by successive instruments, has been assigned to the plaintiffs. The property involved is described as lot 16 and the west half of lot 15, of block 54, 'of Fisher's First Subdivision of Alton Beach. The annual rental was $40,000 a year.

The lease contains a paragraph, which, in substance, provides that if the lessor should desire a revision of the rent it could notify the lessee on a fixed day prior to the end of any ten year term, specifying the name of an appraiser, and within 30 days the lessee should designate an appraiser to act for it. The appraisers were to be instructed to examine the premises and make a report in writing of the fair market value of the fee simple title to the land irrespective of any improvements and as though it were vacant. If the two appraisers "are unable to agree" upon the fair market value of the property within thirty days, they shall select a third one and the opinion of any two as to the fair market value shall be conclusive upon the lessor and the lessee.

The parties followed the procedure outlined by the lease. The defendant-lessor appointed Van C. Kussrow who appraised the property at $600,000. The plaintiff-lessees appointed S. Z. Bennett who appraised the property at from $490,000 to $500,000. As there was manifest failure to agree, the two appraisers appointed W. Bates Cole who appraised the property at $575,000. The defendant's appraiser, Van C. Kussrow, indicated a willingness to meet Mr. Cole's appraisal and to agree to a valuation of $575,000. The plaintiffs declined to accept such appraisal, and this litigation followed.

The plaintiffs take the position that the appraisers did not render their appraisal of the fair market value of the land as though it were vacant and unimproved nor did they render their appraisal of the land as though it were a vacant parcel; hence they contend there was a failure to comply with the provisions of the lease. This contention cannot be sustained. The lease does not provide any method whereby the appraisals shall be made. It only provides for the appraisal of "the fair market value of the fee simple title to the land hereby leased irrespective of any improvements thereon or of this lease, just as though the said land were then vacant and unimproved, and taking into consideration its utility and value for use at that time as though it were a vacant parcel of ground with no buildings thereon without regard to the cost of removing any such existing building." Mr. Cole, the third appraiser, testified — "I arrived at the fair market value of the land through the residual method of valuation." He said he took into consideration leases on adjoining buildings or surrounding buildings, which included two adjoining stores. He further said that this method was commonly used in this area and that the residual method never takes into consideration the improvements that are on the property; that his valuation was irrespective of the present improvements. He testified — "As I recall, the lease says that we were to value the property without any consideration to the improvements thereon."

Mr. Kussrow said that he acted along the same lines on which Mr. Cole acted. He took comparisons that had been made on land values almost opposite the subject property within half a block on which the federal government, for estate purposes, had put a certain value, on the opposite corner on which a loan was made, and on an appraisal directly to the west of the property. He took all of those things into consideration. He said that the property was entirely built up around there, that is, that there was no vacant property there at all. In response to a question in a situation where it is entirely built up how he could arrive at an appraised valuation, he said it was impossible except on the land residual method, which is the standard method used by appraisers.

In this connection, it might be explained that in applying the residual method of valuation, in the absence of sales of comparable property, the appraiser (1) erects on the property a hypothetical one story building and puts a value on it. He then (2) deducts the cost, expense and depreciation of this building and a fair return on it and (3) by subtraction of (2) from (1), arrives at a "residual" in dollars and cents. (4) That residual is capitalized and the property valued accordingly.

Mr. Bennett, after pointing out the objections to the residual method, said he eventually ended up with it. After adopting that method, he used his own judgment based on conversations with informed persons.

"Q. Do you agree that the application of the residual method is necessary in such cases?

"A. Only as a judgment figure; not as a figure to arrive at a conclusion.

"Q. Do you know of any other method whereby an evaluation could be reached?

"A. No sir. Your Honor, appraising is an inexact science. It is more judgment than mathematics. There are only two methods — either comparable sales or applying a residual and using that to go with your judgment."

The error, in my opinion, into which the plaintiffs have fallen is their assumption that the lease provides the "method to be followed by appraisers" in determining on revaluation the fair market value of the leased land. It does not. It is quite true that it provides that the fair market value shall be determined "irrespective of any improvements thereon" or "of this lease" and "just as though the said land were then vacant and unimproved." But it leaves the *method* entirely up to the appraisers. As Mr. Bennett pointed out, appraising is an inexact science.

It is quite obvious that the paragraph of the lease under consideration was put there for a purpose. The parties to this agreement contemplated that Miami Beach would grow and develop and the property would become more valuable as time passed. The lessor sought to protect herself by providing that every ten years the bare land would be revalued. To adopt the plaintiffs' view would be to nullify completely this provision of the lease. Conceivably in 99 years this property may become worth millions of dollars. Shall we deviate from that which is, at most, a procedural matter to save a vital part of the lease, or shall we sacrifice a vital part of the lease to save a procedural matter? Is the object and purpose of the lessor that her property be revalued every ten years to be thwarted just because adjoining property has been completely built up and there is no vacant property left in the neighborhood which would afford a basis for comparison of value? I think not.

It is the view of this court that the provisions of the lease respecting revaluation each ten years are valid, binding and enforceable and should not be frittered away by strained construction.

As far as the argument that the action of Mr. Kussrow in indicating his willingness to "meet" the figure arrived at by Mr. Cole is concerned, suffice it to say that I think the lease contemplates that the appraisers shall do just this. It provides — "If the two appraisers *are unable to agree* upon the fair market value of the land *within thirty days* . . . ." This seems to contemplate that there shall be some exchange of ideas between them and they shall endeavor to reach an agreement as to the value that is mutually satisfactory. In any event, this is a most common procedure not only among appraisers and arbitrators but notoriously among jurors, legislators, members of city, county, state and federal boards, and even judges — yes, even judges. They frequently "concur in the conclusion" when they have no sympathy with the reasoning at all.

It is therefore ordered, adjudged, declared and decreed —

1. That the methods of revaluation followed by the appraisers, W. Bates Cole and Van C. Kussrow, were in conformity with the provisions of the lease made on March 13, 1946 between Gertrude C. Roney, joined by her then husband, N. B. T. Roney, and the Lincoln Corporation.

2. That the value of the property for the ten year period from April 1, 1956 to March 31, 1966 is fixed at $575,000 and the annual rental payable for the use and occupancy of the premises covered by the lease for that period shall be eight per cent of such sum or $46,000.